[Cite as *Dukuzumuremyi v. Martin*, 2025-Ohio-508.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| RASHIDAH S. DUKUZUMUREMYI, | **CASE NO. 2024-L-047** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| CANDICE R. MARTIN, | Trial Court No. 2022 CV 001615 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: February 18, 2025
Judgment: Affirmed

*Mark P. Herron*, 5001 Mayfield Road, Suite 318, Lyndhurst, OH 44124 (For Plaintiff-Appellee).

*David Glenn Phillips*, The Brown Hoist Building, 4403 St. Clair Avenue, Cleveland, OH 44103 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1}   Appellant, Candice R. Martin ("Candice"),[1] appeals the judgment of the Lake County Court of Common Pleas, following a bench trial, in which the court (1) awarded her $750.72 in damages on her breach-of-contract counterclaim against Appellee, Rashidah S. Dukuzumuremyi ("Rashidah"); (2) granted judgment to Rashidah on her replevin claim; and (3) granted judgment to Rashidah on Candice's conversion counterclaims.

---

1. The Court will refer to the parties by their first names for the sake of brevity. No disrespect is intended.

{¶2} Candice raises four assignments of error, arguing that the trial court erred by granting judgment to Rashidah on the replevin claim and the conversion counterclaims and by awarding Candice only $750.72 in damages on her breach-of-contract counterclaim.

{¶3} Having reviewed the record and the applicable law, we find Candice's assignments of error to be without merit. The trial court committed no errors of law, and its judgments are not against the manifest weight of the evidence. Therefore, we affirm the judgment of the Lake County Court of Common Pleas.

## Substantive and Procedural History

{¶4} Rashidah and Candice had an "on-and-off" relationship between 2007 and 2012. In 2007, Candice purchased a house in Euclid, Ohio, where the parties and Rashidah's two daughters lived between 2007 and 2012 and again between 2020 and July 2022. During the latter period, the parties agreed to share certain household expenses, including the mortgage, utilities, and car insurance.

{¶5} In December 2021, Rashidah purchased a Shih Tzu dog ("Gizmo") from relatives for $500. Rashidah was given a sales receipt listing her as the sole purchaser. Candice claims that the parties jointly purchased Gizmo and that her half of the purchase price ($250) was applied toward Rashidah's outstanding portion of household expenses. Rashidah denies that claim.

{¶6} In December 2021 and March 2022, Rashidah took Gizmo to the veterinarian for vaccinations, allegedly at her sole expense. The certificate of vaccination identifies Rashidah as Gizmo's owner. Gizmo was groomed on several occasions at the

2

pet store where Candice's cousin worked. Candice alleged involvement in many of those appointments.

**{¶7}** In July 2022, the parties ended their relationship. On July 21, 2022, Rashidah obtained Gizmo's dog license in Cuyahoga County. On July 22, 2022, Candice took possession of Gizmo and moved to Lake County. Candice alleged that while moving her belongings out of the Euclid house, she placed a book bag containing $5,600 in cash on the front seat of her car; when she came outside, however, the bag was empty and Rashidah was walking down the street. Rashidah denied taking the money.

**{¶8}** On July 26, 2022, Candice applied for Gizmo's dog license in Lake County. On July 28, 2022, Candice had Gizmo certified as her emotional support animal.

**{¶9}** In September 2022, Rashidah was ordered to vacate the Euclid house. One of Rashidah's daughters remained at the house as Candice's tenant. Candice alleged that she later performed a walk-through of the Euclid house and noticed that items of personal property were allegedly missing, including appliances, furniture, tools, and equipment. Rashidah denied taking Candice's property.

**{¶10}** On September 1, 2022, Rashidah, through counsel, filed a civil complaint in the Willoughby Municipal Court asserting claims against Candice for replevin and conversion regarding Gizmo. On the same date, Rashidah filed a motion for an order of possession for Gizmo. Candice requested a hearing on the motion, which was held before the magistrate on October 14, 2022. On October 18, 2022, the magistrate filed a decision finding probable cause to support Rashidah's motion and recommending an order of possession in Rashidah's favor. Candice posted a bond to retain possession of Gizmo pending final judgment. Neither party filed objections to the magistrate's decision.

3

Case No. 2024-L-047

**{¶11}** On October 26, 2022, Candice, through counsel, filed an answer and six counterclaims. Candice alleged that Rashidah breached the parties' oral agreement to share household expenses. According to Candice, the parties' agreement encompassed the purchase of Gizmo. Candice also alleged that Rashidah wrongfully took her cash and personal property. On the same date, Candice filed a motion to certify the proceedings to the court of common pleas because her claims sought relief in excess of the municipal court's jurisdictional limit. On November 16, 2022, Rashidah filed a reply to Candice's counterclaims.

**{¶12}** On December 5, 2022, the municipal court filed a judgment entry. The court adopted the magistrate's decision and stated that an order of possession for Gizmo "shall issue." It also noted that the parties had 14 days from the filing of the magistrate's decision to file objections.

**{¶13}** On December 13, 2022, the municipal court filed an order awarding possession of Gizmo to Rashidah. On the same date, the municipal court granted Candice's motion to certify and transferred the proceedings to the Lake County Court of Common Pleas.

**{¶14}** After the case was transferred to the common pleas court, the parties engaged in discovery. On December 1, 2023, Rashidah filed a motion for partial summary judgment and for a final award of possession for Gizmo, which Candice opposed. The trial court denied Rashidah's motion and scheduled a settlement conference for March 19, 2024, and a bench trial for April 25, 2024.

**{¶15}** On April 11, 2024, Candice filed a motion in limine seeking to preclude Rashidah from introducing and testifying about the sales receipt for Gizmo's purchase.

4

Candice argued that the document did not meet the requirements to establish valid dog ownership pursuant to R.C. 955.11(B).

{¶16} On April 25, 2024, the parties appeared for the bench trial. The trial court denied Candice's motion in limine, stating that it would consider the sales receipt for "what purpose the court should consider it for when it is presented." Rashidah testified at trial and submitted several exhibits relating to Gizmo's expenses, including the sales receipt, receipts for dog licenses, records involving grooming and veterinarian appointments, and a certificate of vaccination. She also submitted records regarding payments she made to Candice for household expenses. The trial court admitted the sales receipt into evidence over Candice's objection.

{¶17} Candice testified at trial and presented testimony from a friend and her mother. She also submitted several exhibits, including a spreadsheet she prepared that purportedly calculated Rashidah's unpaid portion of household expenses, copies of bills, and records of payments that she received from Candice. Both parties filed post-trial briefs.

{¶18} On May 30, 2024, the trial court filed a judgment entry. First, the trial court granted judgment to Rashidah on her replevin claim and determined she was Gizmo's lawful owner. The court relied on the fact that Rashidah paid the entire purchase price and procured the original dog license. The trial court found that while Rashidah's sales receipt did not comply with R.C. 955.11(B), it provided "some indicia" of the parties' intent regarding ownership. Second, the trial court granted judgment to Rashidah on Candice's conversion counterclaims, finding that Candice failed to prove Rashidah exercised dominion or control over the cash or property. Third, the trial court found that the parties

5

entered into an oral agreement to share household expenses for utilities, car insurance, and the mortgage and that Rashidah breached that agreement; however, Candice failed to prove damages for utilities and car insurance. The trial court awarded Candice $750.72 in damages for the mortgage.

{¶19} On June 13, 2024, the trial court granted Candice's motion to stay execution of its judgment.

{¶20} Candice timely appealed and raises four assignments of error.

**Standard of Review**

{¶21} Candice's assignments of error involve the trial court's findings following a bench trial. "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review . . . ." *Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 30 (11th Dist.). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].'" *Id.* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported by some competent,

6

Case No. 2024-L-047

credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶22} "[A] court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct. . . . The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. . . . If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, § 603, at 191-192 (1978).

{¶23} "[T]he trial court's legal findings," by contrast, "are reviewed de novo." *Ultimate Salon* at ¶ 30. De novo review generally means the appellate court independently reviews the record and affords no deference to the trial court's decision. *In re Placement of A.R.V.*, 2016-Ohio-4929, ¶ 12 (11th Dist.).

**Replevin**

{¶24} Candice's first assignment of error states: "The Trial Court Erred in Ruling for Appellee on her Claim For Replevin and Possession of Gizmo, Based on the Weight the It [Sic] Provided to the Evidence on the Claim."

7

**{¶25}** "A replevin action provides the means to obtain possession of specific personal property that one has a right to possess" and lies "against one having, at the time the suit is begun, actual or constructive possession and control of the property." *Lacy v. State*, 2020-Ohio-3089, ¶ 62 (11th Dist.). Under Ohio law, dogs are personal property. *Id.*; R.C. 955.03 (dogs "shall be considered as personal property"). Therefore, dogs are subject to replevin actions. *Butera v. Beesler*, 2023-Ohio-2257, ¶ 23 (11th Dist.).

**{¶26}** Candice argues that Rashidah's sales receipt for Gizmo did not comply with the requirements in R.C. 955.11(B); therefore, it had no evidentiary value, and the trial court should have excluded it.

**{¶27}** R.C. 955.11(B) provides:

Upon the transfer of ownership of any dog, the seller of the dog shall give the buyer a transfer of ownership certificate that shall be signed by the seller. The certificate shall contain the registration number of the dog, the name of the seller, and a brief description of the dog. Blank forms of the certificate may be obtained from the county auditor. A transfer of ownership shall be recorded by the auditor upon presentation of a transfer of ownership certificate that is signed by the former owner of a dog and that is accompanied by a fee of five dollars.

**{¶28}** Candice cites *Eltibi v. Kocsis*, 2021-Ohio-2911 (9th Dist.), a case in which the plaintiff established sole ownership of a dog based on an adoption contract that contained necessary information to qualify as a transfer of ownership certificate under R.C. 955.11(B). *Id.* at ¶ 17.

**{¶29}** Here, there is no dispute that the sales receipt did not qualify as a "transfer of ownership certificate" under R.C. 955.11(B). However, "R.C. 955.11(B) does not specify that creation of the certificate effectuates the transfer of ownership." *Butera,* 2023-Ohio-2257, at ¶ 29 (11th Dist.). In fact, "[c]ourts have determined ownership without reference to R.C. 955.11(B) or a requirement of a transfer certificate." *Id.* at ¶ 31.

8

**{¶30}** Further, noncompliance with R.C. 955.11(B) does not necessarily mean the sales receipt was inadmissible evidence. "All relevant evidence is admissible," except as otherwise provided by law or rule. Evid.R. 402. "Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added.) The trial court found that neither party produced a document that complied with R.C. 955.11(B). Therefore, the sales receipt was "some indica" of the parties' intent regarding ownership. In other words, the receipt was relevant because it had some tendency to make the fact of Rashidah's ownership more probable than without it. Given the nature of the ownership evidence presented to the trial court, we agree that the sales receipt was relevant. Therefore, it was admissible.

**{¶31}** Candice next argues that the trial court improperly focused on the lack of law in Ohio regarding the "best interest of the dog." We disagree. The trial court stated as follows:

> In Ohio, a dog is considered chattel or personal property. *See* R.C. 955.03. There is no "best interest of the dog" law in Ohio. *See State ex rel. Lewis v. Bd. Of Jackson Cty. Commrs.*, 2002-Ohio-1424, at ¶ 9 (4th Dist.) Thus, if [Rashidah] can establish she is the rightful owner of the dog, she will be awarded the dog in replevin.

**{¶32}** The trial court's statement correctly identifies the legal issue in a replevin claim as involving property rights. The court did not state or imply that Candice had asserted a "best interest of the dog" argument. We acknowledge that the case cited by the trial court (*Lewis*) does not use the phrase "best interest of the dog." However, there is caselaw support for the trial court's statement. *See, e.g., Green v. Animal Protection League of Mercer Cty.*, 2016-Ohio-2767, ¶ 17 (3d Dist.) ("the trial court's assertion that

9

the dog should be returned to [plaintiff] because it is in the dog's *best interest* is also erroneous since *the best interest of the dog* is not relevant in adjudicating an action in replevin") (Emphasis added.)

{¶33} Candice next argues that trial court's judgment in Rashidah's favor is against the manifest weight of the evidence. According to Candice, the trial court improperly assigned "significant" weight to the sales receipt and to Rashidah's purchase of the original dog license. In addition, she argues the court failed to assign "proper weight" to her evidence of ownership.

{¶34} It is well established that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence . . . [is] primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. While Candice disagrees with the trial court's weighing of the evidence, she does not assert, much less demonstrate, that the trial court "'clearly lost its way'" and "'created such a manifest miscarriage of justice that "the [judgment] must be reversed and a new trial ordered.'" *Thompkins*, 1997-Ohio-52, at ¶ 25, quoting *Martin*, 20 Ohio App.3d at 175. Therefore, Candice has not met her burden to affirmatively demonstrate that the trial court's judgment is against the manifest weight of the evidence. *See Hileman v. Hileman*, 2024-Ohio-2404, ¶ 17 (11th Dist.); App.R. 16(A)(7).

{¶35} In addition, the evidence that Candice cites on appeal was not entitled to significant weight. First, Candice contends that the trial court failed to properly weigh her possession of Gizmo *before* the parties ended their relationship in July 2022. "[P]roof of possession of a chattel is at least some evidence of ownership, which, of course, may be overcome by proof of ownership in another." *Mielke v. Leeberson*, 150 Ohio St. 528, 533

10

(1948). However, Candice cites no portion of the record establishing that she possessed Gizmo before the parties ended their relationship. The trial court found just the oppositive—that Candice "took Gizmo in July of 2022 *after* the relationship between the parties ended." (Emphasis added.) The trial testimony supports the trial court's finding.

{¶36} Second, Candice contends that the trial court failed to properly weigh her "emotional attachment" to Gizmo. The trial court acknowledged that Candice "may have formed a significant bond and attachment to Gizmo." However, the court found that Candice's bond/attachment did "not give her superior property rights." Candice relies on this Court's decision *Frederick v. Frederick*, 2000 WL 522170 (11th Dist. Mar. 31, 2000), to argue that her relationship with Gizmo was a "significant factor" in determining ownership. *Frederick* involved an appeal from the division of marital property in a divorce decree. *See id.* at *1. Candice cites our discussion of the concept of "transmutation," pursuant to which a domestic relations court considered multiple factors to determine whether "property that would otherwise be separate is converted into marital property." *Id.* at *10. One such factor was the property's "significance to the parties." *Id.* This case involves a replevin claim, not a divorce, the division of marital property, or transmutation. Therefore, *Frederick* is distinguishable. In addition, the cited discussion in *Frederick* does not reflect current Ohio law. This Court noted in *Frederick* that "the doctrine of transmutation was effectively supplanted by the concept of traceability" pursuant to statute. *Id.*

{¶37} Third, Candice contends that the trial court failed to properly weigh the fact that Gizmo became her certified animal assistant. The trial court acknowledged that Candice "had Gizmo certified as her emotional support animal on July 28, 2022."

11

However, that certification indisputably occurred after the parties ended their relationship. The trial court found that Candice's evidence did not establish her ownership "during the relevant time period of December 2021 through July 2022." Candice does not dispute that was the relevant time period.

{¶38} Candice next challenges the trial court's credibility determinations. She emphasizes her "credible" testimony that the parties intended to obtain a dog together and that she contributed to Gizmo's purchase price. Candice also argues that the trial court assigned too much credibility to Rashidah's testimony despite its falsity being demonstrated on "at least six separate instances."

{¶39} It is well established that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact[,] and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 2012-Ohio-6127, ¶ 58 (11th Dist.).

{¶40} We find no valid reason to disturb the trial court's credibility determinations. The trial court viewed the parties' respective demeanor, gestures, and voice inflections and found that Rashidah's testimony was more credible. That decision was within the province of the trial court as the trier of fact. While Candice points to evidence that purportedly contradicts Rashidah's testimony, the existence of conflicting evidence, by itself, does not mean that Rashidah testified falsely.

{¶41} Accordingly, Candice's first assignment of error is without merit.

12

Case No. 2024-L-047

**Breach of Contract**

{¶42} Candice's second assignment of error states: "The Trial Court Erred in Its Ruling with Respect to Appellant's Claim for Amount the Due [sic] on the Parties' Oral Agreement."

{¶43} In order to establish a breach-of-contract claim, oral or written, a plaintiff must prove (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages. *Shaffer v. Triple Diamond Excavating*, 2010-Ohio-3808, ¶ 18 (11th Dist.). As stated, the trial court found that the parties entered into an oral agreement to share expenses for utilities, car insurance, and the mortgage and that Rashidah breached that agreement; however, Candice failed to prove damages for utilities and car insurance. Therefore, the trial court awarded Candice only $750.72 in damages for the mortgage.

{¶44} Candice argues that the trial court's award is against the manifest weight of the evidence. According to Candice, the trial court failed to give proper weight to her "undisputed" testimony regarding the amount Rashidah owed. In addition, she argues the court assigned too much weight and credibility to Rashidah's testimony.

{¶45} Candice's argument misapprehends the trial court's judgment as being based on the parties' respective testimony. The trial court found that Candice's calculation of damages was based on the spreadsheet she prepared, which the court admitted into evidence over Rashidah's objection. However, the court found that the documents underlying Candice's spreadsheet, which were also admitted into evidence, lacked "specificity and accuracy." The trial court relied on Evid.R. 1006, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of

13

a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

{¶46} Courts have noted that when the underlying documents used in comprising a summary are admitted into evidence, the finder of fact has the ability to independently ascertain the accuracy of the information contained in the summary. *State v. Clark*, 2021-Ohio-559, ¶ 41 (10th Dist.); *State v. Edwards*, 2004-Ohio-4015, ¶ 25 (3d Dist.). Candice does not argue that the trial court's review of the underlying documents was inaccurate. She also fails to assert and demonstrate that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins*, 1997-Ohio-52, at ¶ 25.

{¶47} Accordingly, Candice's second assignment of error is without merit.

## Conversion

{¶48} Candice's third assignment of error states: "The Trial Court Erred in Its Ruling with Respect To Appellant's Claim Against Appellee for her Taken Cash Money."

{¶49} Candice's fourth assignment of error states: "The Trial Court Erred in Its Ruling with Respect to Appellant's Claim Against Appellee for her Taken Personal Property."

{¶50} Candice's third and fourth assignments of error involve her counterclaims for conversion. "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his [or her] possession under a claim inconsistent with his [or her] rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). "The elements of conversion are: (1) the plaintiff's ownership and right to possess the property at the time of the conversion; (2) the defendant's conversion by

14

wrongful act of plaintiff's property rights; and (3) damages." *Martin v. MAHR Machine Rebuilding, Inc.*, 2017-Ohio-1101, ¶ 13 (11th Dist.).

**{¶51}** Candice argues that the trial court's judgment in Rashidah's favor is against the manifest weight of the evidence. According to Candice, the court failed to give "proper weight" to her testimony and gave "too great weight or credibility" to Rashidah's testimony. Once again, Candice fails to assert and demonstrate that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins*, 1997-Ohio-52, at ¶ 25.

**{¶52}** In addition, the evidence that Candice cites on appeal was not entitled to significant weight. Candice testified that on the day she moved out of the Euclid house, she put a book bag of cash in her car. At some point, she heard Rashidah leave the house. When she came outside, she saw items from her book bag on ground outside the car. When she opened her car door, the book bag was "dumped," and the cash was missing. She saw Rashidah walking down the street. Candice's mother testified to a similar version of events.

**{¶53}** The trial court found that Candice "failed to demonstrate by a preponderance of the evidence that [Rashidah] exercised dominion or control over [Candice's] cash." The court noted the lack of evidence that Rashidah was "carrying anything, let alone a large sum of cash in small bills, which would clearly require something to carry the cash." The court also noted the lack of evidence that Candice "filed a police report," "yelled or seemed alarmed at the time about the incident," "ran after [Rashidah]," or "made any effort to immediately inquire about what happened to her cash." According to the trial court, Candice's argument "also fails to consider the possibility of

15

some other person taking the cash." The court further found that Candice's claims "lack credibility."

**{¶54}** Candice also testified that she conducted a walk-through of the Euclid house after Rasidah moved out and noticed that specific items were missing. The trial court found that Candice "failed to present any evidence that [Rashidah] exercised dominion or control over the household items. At best, [Candice] may have established the items went missing." However, she was "unable to link [Rashidah] to the taking of the items."

**{¶55}** Upon review, we find no error in the trial court's assessment of Candice's evidence. This Court has defined "circumstantial evidence" as evidence that is "not grounded on actual personal knowledge or observation of the facts at issue, but of other facts from which inferences are drawn, illustrating indirectly the facts sought to be established." *State v. Dietrich*, 2024-Ohio-2039, ¶ 15 (11th Dist.). Candice's evidence, if believed, showed that Rashidah had an *opportunity* to take the cash and the personal property. Without more, there were insufficient facts upon which to infer that Rashidah actually did so.

**{¶56}** Accordingly, Candice's third and fourth assignments of error are without merit.

16

{¶57} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


ROBERT J. PATTON, P.J.,

EUGENE A. LUCCI, J.,

concur.